| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM JOSEPH LITTLE, JR.,<br><br>Defendant. | NO. CR-08-244-DLJ<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR BREACH OF PLEA AGREEMENT** |

On September 4, 2008, the Court heard oral argument on Defendant William Joseph Little, Jr's ("Little") motion to dismiss the instant indictment on the ground that it violates a Plea Agreement entered into between Little and the government in a previous case. Having considered the papers submitted, the arguments of counsel, and the applicable law, the Court hereby DENIES the motion.

**I. BACKGROUND**

**A. Factual Background and Procedural History**

On August 29, 2004, Little was charged in a second superseding indictment in case number CR-04-122-SI with two counts of tax evasion and one count of filing false tax returns in 1997, 1998, and 1999. The charges arose out of an investigation into trusts controlled by Little, including Osprey Enterprises ("Osprey") and Quest Foundation ("Quest").

On February 17, 2005, Little entered into an Agreement with the government providing that he would plead guilty to one count of filing a false tax return for failing to report income generated by Osprey and Quest on his 1998 personal federal income tax return. The government, in return, agreed "not to file or seek any additional charges against the defendant that could be filed as a result of the investigation that led to the captioned indictment."

On April 16, 2008, the government filed the instant indictment against Little and co-defendants Joseph Lawrence Williams (Williams) and Keith Aaron Vann (Vann).  The government alleges, inter alia, that between 2002 and 2004, Little, Williams, and Vann conspired to defraud victims Joseph S. and Jean O. out of charitable donations to an entity named Global Missions UN Limited ("Global"), which was founded and controlled by the defendants.

At the time of the execution of the previous Agreement in case number CR-04-122-SI, Little contends that the government possessed evidence which was relevant to the prosecution of the instant fraud case.

The first item of evidence is an email dated July 1, 2003, which Little sent to Williams and Vann.  Although this evidence was discovered as part of the investigation into case number CR-04-122-SI (as opposed to the investigation leading to the instant case), the transmission of this email is the basis for the wire fraud charge in count six of the instant indictment against Little.

2

The second item of evidence is that, between 2003 and 2004, the government conducted a civil tax proceeding against co-defendant Williams, which resulted in Williams producing documents to the government that related to various aspects of Global's finances and activities.

The final item of evidence is that, on April 12, 2004, as part of her investigation into case number CR-04-122-SI, IRS Special Agent Anita Dobberstein (Dobberstein) conducted surveillance at 1439 Lincoln Way in Auburn, California.  Although Dobberstein's surveillance notes make no mention of Global, Little contends Global was operated out of 1439 Lincoln Way on that date.

Dobberstein has submitted a declaration in support of the government's opposition to the present motion declaring that she was the case agent on the investigation for case number CR-04-122-SI, as well as case agent for the instant case.  According to Dobberstein, federal authorities did not become aware of Little's alleged involvement in criminal activities related to Global until May 19, 2005, when the matter was brought to their attention by a detective of the Dublin, California, Police Department.

In the instant motion, Little moves to dismiss the present indictment on the ground that it is barred by the prior Agreement in case number in CR-04-122-SI, as it is an additional charge that could have been filed at an earlier time.  The government opposes the motion.

3

**B.    Legal Standard**

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such [a] promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Plea agreements are contractual in nature and must be interpreted pursuant to general contract principles. See United States v. Packwood, 848 F.2d 1009, 1011 (9th Cir. 1988).  Courts interpret the terms of plea agreements literally, United States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002), but "'construe ambiguities in favor of the defendant,'" Id., placing "'responsibility for any lack of clarity,'" on the government.  Id.

When the plain language of an agreement is unambiguous on its face, the court may not consider parol or extrinsic evidence in interpreting the agreement. See United States v. Nunez, 223 F.3d 956, 958 (9th Cir. 2000).  If, on the other hand, an agreement is unclear, the court should look to the facts of the case in order to determine what the parties reasonably understood the agreement to mean. See id.  If the government breaches a plea agreement, a court may order specific performance. See United States v. Sandoval-Lopez, 122 F.3d 797, 800 (9th Cir. 1997).

## II. DISCUSSION

The question before the Court is whether the instant prosecution is a case which "could" have been filed "as a result of

the investigation that led" to case number CR-04-122-SI.  The Court must interpret the text and the meaning of the Agreement to answer this question.  Here, the arguments of both parties misconstrues the plain language of the Agreement promising not to prosecute.

Little contends that the government agreed not to file any additional charges: (a) which it knew about; or, (b) it did not know about, but which it should have known about as a result of the earlier investigation, which resulted in case number CR-04-122-SI. In Little's view, because the government had at least some evidentiary information about Global at the time the Agreement was executed, which was relevant to Little's alleged fraudulent conduct charged in the present indictment, it "could" have conducted further investigation enabling it to bring the instant indictment. As such, Little concludes that the government breached the Agreement, such that the instant indictment be dismissed.

Little's reading of the Agreement is too broad.  Based on the plain language of the Agreement, the government only agreed to forego charges which "could" have been filed as a result of the earlier investigation.  The word "could" is unambiguous and connotes that in order for the instant indictment to be covered by the Agreement, the government must have known of sufficient evidence to indict Little on the charges now filed.  The evidence known to the government was plainly insufficient to support the charge in the present indictment.  Little's reading of the term

5

"could" strays too far from the plain meaning of the word, as "could" means "capable of doing," not "should have been capable of doing."

Little could have sought a promise from the government that it would not file any additional charges based on evidence in its possession at the time the Agreement was executed, but did not do so. See, e.g., United States v. Streich, 560 F.3d 925, 928-29 (9th Cir. 2009) (government promised "not to prosecute the Defendant for any additional offenses . . . that are based upon evidence in its possession at this time") (emphasis added). Little may not now read terms into the Agreement that are plainly absent from the face of the document.

The government, on the other hand, construes the Agreement too narrowly. The government argues that it only agreed to forego additional charges "related to and resulting from the investigation leading to the charged tax offenses filed in 2004." The government construes the Agreement as only prohibiting it from prosecuting tax crimes discovered as a result of the earlier investigation resulting in case number CR-04-122-SI.

In support of its position, the government cites United States v. Clark, 218 F.3d 1092, 1094 (9th Cir. 2000), where a defendant pled guilty to the commission of three postal robberies in exchange for a promise from the government that "no other charges will be filed against defendant in connection with this

6

<u>investigation</u>." (emphasis added).  In that case, the government later indicted the defendant for a pawn shop burglary, which was also under investigation at the time the postal robbery plea negotiations were underway.  Id.  The defendant moved to dismiss the new indictment on the ground that it violated the government's promise not to prosecute.  Id.  The Ninth Circuit rejected this argument, reasoning that because "the plea agreement mentions no crimes or charges other than the three postal robberies to which Clark pleaded guilty . . . the term 'this investigation' refers to the investigation of the postal robberies, and does not encompass the [pawn shop] burglary."  Id. at 1096.

Here, the government incorrectly attempts to analogize <u>Clark</u>, arguing that because "Little's plea agreement clearly and unambiguously refers only to the tax violation he committed," the government could not reasonably have waived its right to prosecute fraud or money laundering charges such as those at issue in this case.  The government's argument ignores the plain meaning of the term "could," which means "capable of doing" and has not been qualified as in <u>Clark</u>.  218 F.3d at 1094 .  Because the government gave up its right to charge Little for "any" crime which it "could" have prosecuted based on the earlier investigation, any case such as the instant case would fall under that agreement regardless of the subject matter of the case, so long as the investigation in case number CR-04-122-SI provided sufficient notice to the

government of the alleged criminal behavior and yielded the necessary evidence to file the present indictment.

The evidence before the Court, however, establishes that the instant case "could" not have been filed as a result of the earlier investigation in case number CR-04-122-SI.  Although the government did possess "some" information about Global's operations at the time the Agreement was executed, Dobberstein declared that no federal authority was aware of Little's alleged fraud and money laundering activities until May 2005, three months <u>after</u> the execution of the Agreement in case number CR-04-122-SI.  Because the government did not have knowledge of the evidence which would have been necessary to sustain any charge of the present indictment, the government "could" not have brought the case "as a result of [that] investigation."  Therefore, the government has not breached the Agreement.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss is DENIED.

IT IS SO ORDERED.

DATED: September 14, 2009

_____
D. Lowell Jensen
United States District Judge