UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>     vs.<br><br>WILLIAM JOSEPH LITTLE, JR., and KEITH AARON VANN,<br><br>             Defendants. | Case No: CR 08-0244 SBA<br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>Dkt. 199, 200, 201, 202, 204, 205 |

On April 16, 2008, the Grand Jury returned an eleven-count indictment charging Defendants Joseph Lawrence Williams ("Williams"), Keith Aaron Vann ("Vann") and William Joseph Little, Jr. ("Little") with various violations arising from a scheme to defraud. Williams died on May 1, 2010. The charges against Vann are conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count One); wire fraud, in violation of 18 U.S.C. § 1343 (Count Seven); and money laundering, in violation of 18U.S.C. § 1957(a) (Counts Nine through Eleven). The charges against Little are conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count One); and wire fraud, in violation of 18 U.S.C. § 1343 (Count Six). The parties are presently before the Court on the Government and Little's respective motions in limine. Having read and considered the papers submitted, and being fully informed, the Court enters the following rulings on the motions.

## I. BACKGROUND

In 1996, Joseph M. Studnek died and left estate to his three adult children who were living in Arizona. The bulk of his estate consisted of two commercial properties located in Anchorage, Alaska ("the Properties"). The decedent's son, Joseph J. Studnek ("Studnek"), and daughter, Jeanne Owens ("Owens"), took an active role in managing the estate.

In 2002, the estate was notified that it had a $900,000 tax deficiency. To offset the estate's tax liability, Studnek and Owens (collectively "the Victims") decided to seek out a charitable organization to which to donate the Properties. To that end, Owen's husband, John Owens, suggested that the Victims speak with Robert Lynes ("Lynes"), a financial planner located in the Phoenix area. Lynes, in turn, suggested that the Victims contact Defendant Williams, whom he described as a minister in California who operated a charitable religious organization.

In March 2003, the Victims and John Owens met with Williams at Lynes' residence in Arizona. At the meeting, Williams informed them that he was a minister with a non-profit religious organization, Global Missions UN Limited ("Global Missions"), which provided humanitarian aid around the world.[1] Williams represented that Global Missions was a charitable organization and that the estate would receive a tax deduction if the Victims donated the Properties. Williams assured the Victims that if they did not receive the tax credit from the IRS for the donation, Williams would return the donation to them. Williams represented that he would be assisted by James Preston, an ecclesiastical attorney who was legal counsel to the church and a former IRS employee who was versed in charitable donations and tax issues. During the meeting, Williams agreed to sell the Properties and to handle the paperwork associated with the donation of the property once sold. Upon his return to California, Williams mailed paperwork to the Victims in Arizona

---

[1] Global Missions was formed in or about July 2002, when Little registered the entity as a corporation in Nevada. The Articles of Incorporation name Williams as "ambassador" and Little as his successor. Little admitted to case agents that he received mail for Global Missions at his place of business in Auburn, California, because Global Missions did not have its own place of business.

to sign, granting Williams the right to sell the property and receive the donated property on behalf of Global Missions.

The Victims transferred title of the Properties to Global Missions on June 2, 2003. Thereafter, Global Missions sold the Properties for approximately $3.4 million. Vann and Williams used a significant portion of the sales proceeds for personal purchases. The Victims, however, were unable to obtain a tax deduction because Global Missions was not a tax exempt charitable organization.

Trial is now set for November 26, 2012. In anticipation of trial, the Government and Little each have filed three motions in limine, for a total of six motions. Vann, who is pro se (with stand-by counsel), filed no motions in limine or responses to any of the motions in limine, or any other pretrial documents. The motions in limine are discussed seriatim.

## II.     GOVERNMENT'S MOTIONS IN LIMINE

### A.     MIL NO. 1 TO EXCLUDE REFERENCE TO POTENTIAL PUNISHMENT

The Government moves for an in limine order to preclude any reference to the Defendants' potential punishment at trial. The motion is unopposed, and the law is clear that a jury should not be informed of a defendant's potential punishment. See United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."). In addition, Ninth Circuit Model Criminal Jury Instruction 7.4 is to the same effect. Accordingly, the Court **GRANTS** the Government's motion in limine to preclude any reference to Defendants' potential punishment.

### B.     MIL NO. 2 TO LIMIT ATTEMPT TO IMPEACH NON-TESTIFYING DECLARANTS

In its second motion in limine, the Government seeks to prevent Defendants from presenting extrinsic evidence to impeach statements made by Williams, who is deceased. Specifically, during its case-in-chief, the Government intends to call the Victims and John Owens to testify to statements made by Williams that he made at a meeting in Arizona (at Lynes residence) in or around February or March 2003. The Government also intends to

1 present various co-conspirator statements, including emails and other correspondence, made by Williams to the Victims and to other co-conspirators.

As an initial matter, the parties agree that Williams' statements are admissible as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E), and that any attacks on his credibility as are governed by Rule 806.  See United States v. Becerra, 992 F.2d 960, 965 (9th Cir. 1993) ("Federal Rule of Evidence 806 permits attacks on the credibility of the declarant of a hearsay statement as if the declarant had testified.").  Rule 806 provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, <u>the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness</u>.  Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

Fed. R. Evid. 806 (emphasis added).

The parties dispute the means for challenging the credibility of Williams' statements.  According to the Government, the methods for impeaching Williams' credibility are collectively set forth in Rule 608(a) (opinion or reputation evidence of character for truthfulness), Rule 609 (prior convictions) and Rule 613 (prior inconsistent statements).  In his opposition, Little contends that his right to impeach is broader than characterized by the Government, and argues that under Rule 608(b), he should be allowed to rely on extrinsic evidence of misconduct to impeach Williams' credibility.  As a general rule, extrinsic evidence may not be used to impeach the credibility of a witness.  Rule 608(b) provides that:

> Specific instances of the conduct of a witness for purposes of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in rule 609, <u>may not be proved by extrinsic evidence</u>.  They may, however, in the discretion of the court, if probative of truthfulness or

> untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed. R. Evid. 608(b) (emphasis added).  In other words, while Rule 608(b) allows cross-examination about specific bad acts that concern the witness's credibility, it "forbids extrinsic evidence to prove the specific bad act occurred." United States v. Goings, 313 F.3d 423, 426–27 (8th Cir. 2002).

The Ninth Circuit has not yet reached the question of whether Rule 806 modifies Rule 608(b)'s ban on using extrinsic evidence of misconduct for impeachment.  The few circuits addressing the issue have reached different conclusions.  In United States v. Friedman, 854 F.2d 535 (2d Cir. 1988), the Second Circuit held that the district court properly excluded impeachment evidence that a hearsay declarant had lied to the police because that evidence was not probative of the truthfulness of the hearsay statement there at issue.  854 F.2d at 569-70.  In doing so, however, the court suggested, in dicta, that extrinsic evidence of such misconduct would have been admissible had the misconduct been probative of truthfulness:  "[Rule 608(b)] limits such evidence of 'specific instances' to cross-examination.  Rule 806 applies, of course, when the declarant has not testified and there has by definition been no cross-examination, and resort to extrinsic evidence may be the only means of presenting such evidence to the jury."  Id. at 570 n.8.

In contrast to Friedman, the District of Columbia Circuit held in United States v. White, 116 F.3d 903 (D.C. Cir. 1997) (per curiam) that extrinsic evidence is not admissible for impeachment of a hearsay declarant's statement.  Id. at 920.  In that case, the district court allowed defense counsel to cross-examine a police officer about a hearsay declarant's drug use, drug dealing, and prior convictions, but disallowed defense counsel from impeaching the declarant's credibility by asking the officer whether the declarant had ever made false statements on an employment form or disobeyed a court order.  White, 116 F.3d at 920.  The declarant was deceased and hence unavailable.  Id. at 911.  The court concluded that defense counsel should have been allowed to cross-examine the officer

about the declarant's making false statements and disobeying a court order. But in doing so, the court observed that defense counsel "could not have made reference to any extrinsic proof of those acts" during cross-examination. Id. at 920. Thus, in contrast to Friedman, the court in White took the position that the ban on extrinsic evidence of misconduct applies in the context of hearsay declarants, even when those declarants are unavailable to testify.

Similarly, the Third Circuit in United States v. Saada, 212 F.3d 210 (3d Cir. 2000) held that under Rule 806, a hearsay declarant may not be impeached with extrinsic evidence of prior bad acts, even if the declarant is not available to testify. Id. at 221. Citing White, the court relied on the plain language of Rule 806, which allows impeachment of a hearsay declarant only to the extent that impeachment is permissible had the declarant testified as a witness. Id. The court reasoned that the unavailability of the declarant did not provide a sound justification for departing from Rule 608(b)'s bar on extrinsic evidence for impeachment:

> [T]he unavailability of the declarant will not always foreclose using prior misconduct as an impeachment tool because the witness testifying to the hearsay statement may be questioned about the declarant's misconduct—without reference to extrinsic evidence thereof—on cross-examination concerning knowledge of the declarant's character for truthfulness or untruthfulness. And, even if a hearsay declarant's credibility may not be impeached with evidence of prior misconduct, other avenues for impeaching the hearsay statement remain open. For example, the credibility of the hearsay declarant—and indeed that of the witness testifying to the hearsay statement—may be impeached with opinion and reputation evidence of character under Rule 608(a), evidence of criminal convictions under Rule 609, and evidence of prior inconsistent statements under Rule 613. The unavailability of one form of impeachment, under a specific set of circumstances, does not justify overriding the plain language of the Rules of Evidence.

Id. (footnote and citations omitted, emphasis added).

In the instant case, the Court is persuaded by the reasoning in White and Saada and finds that Rule 801(d)(2)(E) does not modify Rule 608(b), and that under Rule 608(b), Defendant cannot rely on extrinsic evidence to impeach statements attributed to Williams.

- 6 -

As explained in those cases, the plain language of Rule 801 states that a hearsay statement is subject to impeachment as "if declarant had testified as a witness." Nothing in Rule 801 creates a carve-out for the admission of extrinsic evidence for impeachment in situations where the declarant is not available.[2]

Accordingly, the Court **GRANTS** the Government' motion in limine to preclude Defendants from offering extrinsic evidence to impeach any non-testifying declarants.

### C. MIL NO. 3 TO PRECLUDE REFERENCE TO FACTS THAT ARE NOT REASONABLY ANTICIPATED TO BE ADMITTED AT TRIAL

In its third and final motion in limine, the Government seeks to preclude Vann from making reference to any facts that "he does not reasonably anticipate will be supported by admissible evidence at trial." Dkt. 201 at 1.[3] Vann has not filed any opposition to the motion. In addition, the Government's request is well taken. No party should make reference to evidence for which that party is aware lacks foundation. Accordingly, the Court **GRANTS** the Government' motion in limine to preclude Vann from making reference to evidence that is not reasonably anticipated to be admitted at trial.

## III. DEFENDANT LITTLE'S MOTIONS IN LIMINE

### A. MOTION IN LIMINE TO EXCLUDE CO-CONSPIRATOR'S STATEMENTS

In its trial brief, the Government has stated its intent to offer the following categories of co-conspirator statements:

1. Statements by Williams and Robert Lynes to the Victims in March 2003 at Lynes' residence;

---

[2] Curiously, Little does not discuss Saada, White or Friedman, but instead, relies on United States v. Uvino, 590 F. Supp. 2d 372 (E.D.N.Y. 2008) for the proposition that extrinsic evidence is admissible to impeach a non-testifying declarant. In Uvino, the district court, citing Friedman, allowed defendants to attack the credibility of non-testifying witnesses (who had invoked their Fifth Amendment rights) through the admission of form 302 FBI witness statements. Id. at 302. However, Uvino is a decision by the Eastern District of New York, which lies in the Second Circuit. As such, the Uvino court was bound to follow Friedman. As discussed above, the holdings in Saada and White are more compelling than Friedman.

[3] Defendant Little's counsel agreed not to make any such references.

    2.       Statements made by Williams, Global Missions, Vann (acting as "James Preston") and Little in written correspondence to the Victims, their agents and the IRS regarding the Victim's donation and the sale of the Property; and

    3.       Statements by Williams, Vann and Little regarding the possible return of the donation to the Victims.  Gov. Brief at 9, Dkt. 196.

Under Rule 801(d)(2)(E), Defendant Little (1) moves to exclude all co-conspirator statements which the Government seeks to introduce at trial, and (2) requests that the Government establish the admissibility of co-conspirator statements at a pretrial evidentiary hearing.  Under Rule 801(d)(2)(E), statements made by a co-conspirator of a party during the course and in the furtherance of a conspiracy are deemed non-hearsay.  For the statements to be admissible under this rule, the Government bears the burden of demonstrating by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statements were made during the course of, and in furtherance of, the conspiracy.  Bourjaily v. United States, 483 U.S. 171, 175 (1987).

The contents of the co-conspirator statements are not alone sufficient to establish the existence of a conspiracy or the participation therein of the party against whom the statements are offered.  Fed. R. Evid. 801(d)(2); see also United States v. Silverman, 861 F.2d 571, 577-78 (9th Cir.1988) ("when the proponent of the co-conspirator's statement offers no additional proof of defendant's knowledge of and participation in the conspiracy, the statement must be excluded from evidence.").  For the co-conspirator statements to be admissible, "there must be some evidence, aside from the proffered statements, of the existence of the conspiracy and the defendant's involvement."  United States v. Gordon, 844 F.2d 1397, 1402 (9th Cir. 1988).  However, "[o]nce a conspiracy is shown, the prosecution need only present slight evidence connecting the defendant to the conspiracy."  United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir. 1988).

### 1. Presence at the March 2003 Meeting

Little first argues that all co-conspirator statements are inadmissible against him because he was not present during the March 2003 meeting when Williams made materially false statements to the Victims (at Lynes' residence) about the benefits of donating the Property. Little cites no legal authority for the proposition that that the defendant must physically be present when the co-conspirator utters the statement in order for it to be admissible under Rule 801(d)(2). To the contrary, it is well-settled that so long as a defendant eventually joins a conspiracy, the admission of a co-conspirator's statement cannot be defeated by an objection that the statement at issue was made prior to the defendant's joining the conspiracy. See e.g., United States v. Segura-Gallegos, 41 F.3d 1266, 1272 (9th Cir. 1994) ("Statements of his co-conspirators are not hearsay even if made prior to the defendant joining the conspiracy."); United States v. Anderson, 532 F.2d 1218, 1230 (9th Cir. 1976) ("Statements of a co-conspirator are not hearsay even if made prior to the entry of the conspiracy by the party against whom it is used."); United States v. DiCesare, 765 F.2d 890, 900 (9th Cir.), amended on other grounds, 777 F.2d 543 (1985) ("'[A] conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy."). Since a co-conspirator's statement made prior to the time the defendant joined the conspiracy is admissible, so too must be a statement made in furtherance of the conspiracy, even if the defendant was not present.

### 2. Evidence of Little's Knowledge

Defendant Little next contends that the Government will be unable to show by a preponderance of the evidence that he knew about, or participated in, the charged conspiracy—and that the Court should therefore hold an evidentiary hearing prior to trial to determine the admissibility of the statements. As noted, the Government need only offer "present slight evidence connecting the defendant to the conspiracy" in order to admit a co-

1  conspirator's statement under Rule 801(d)(2)(E).  Crespo de Llano, 838 F.2d at 1017
2  (emphasis added).[4]
3     Despite his claim to the contrary, there is ample evidence to establish a nexus
4  between Defendant Little and the conspiracy formed by Williams.  Little has admitted to
5  setting up Global Missions, the bogus non-profit entity used to facilitate the "donation."  He
6  admitted to FBI Agents that he had contact with the Victims by telephone and in written
7  correspondence about their donation.  In addition, Vann has admitted that he along with
8  Little and Williams conspired together to defraud the Victims out of their Property, and
9  how they each agreed to play different "role" on behalf of Global Missions when
10 communicating with the Victims and the IRS.  Vann also disclosed that Williams made
11 multiple payments of $5,000 to himself and Little for their role in the fraudulent scheme.
12 There also is evidence in the form of multiple emails between Little, Vann and Williams in
13 which they discuss how to carry out their scheme, where to transfer the money, how to
14 conceal their fraud, their roles and responsibilities in the scheme, and how to retain the
15 money once the charitable donation was rejected.  This, and other evidence to be presented
16 at trial, is far more than the requisite "slight" evidence connecting Little to the conspiracy.
17 Accordingly, the Court **DENIES** Defendant's motion in limine to exclude co-conspirator
18 statements and **DENIES** Defendant's request for an evidentiary hearing.

   **B.   MOTION IN LIMINE TO EXCLUDE LITTLE'S PRIOR CONVICTION FOR FILING FALSE TAX RETURNS**

   Little seeks to exclude his prior conviction for filing a false tax return, pursuant to
Rule 609(a).  This rule provides that evidence of "any crime regardless of the
punishment … must be admitted if the court can readily determine that establishing the
elements of the crime required proving—or the witness's admitting—a dishonest act or
false statement." Fed. R. Evid. 609(a)(2).  Where a conviction is admissible under this
provision, "the trial court has no discretion to weigh its prejudicial effect," Dean v. Trans

---

[4] Little does not dispute that there was a conspiracy; he simply alleges that he was not part of it.

World Airlines, 924 F.2d 805, 811-12 (9th Cir. 1991), unless the conviction is more than ten years old, Fed. R. Evid. 609(b).

In 2005, less than ten years ago, Defendant pled guilty to subscribing a false tax return in violation of 26 U.S.C. § 7206(1) in a criminal matter before Judge Illston. See United States v. Little, CR 04-0122 SI.  Filing a false tax return is a crime of dishonesty. United States v. Thompson, 806 F.2d 1332 (7th Cir. 1986) (affirming trial court's admission of prior conviction for filing false tax returns as a crime involving dishonesty or false statement resulting in imprisonment within ten-year period); see also Dean, 924 F.2d at 811-12 (9th Cir. 1991) ("a conviction for failure to file a tax return involves dishonesty within the meaning of Rule 609.")  As such, the admission of Little's prior conviction for filing a false tax return is mandatory under Rule 609(a)(2).

Defendant Little argues that his prior conviction should be excluded under Rule 609(a)(1), which provides that a conviction punishable by imprisonment for more than one year is admissible only "if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]" Fed. R. Evid. 609(a)(1)(B).  However, the Government need not resort to Rule 609(a)(1) because the conviction is clearly admissible as a crime of dishonesty under Rule 609(a)(2).  Accordingly, the Court **DENIES** Defendant Little's motion in limine to exclude evidence of his prior conviction for filing a false income tax return.

### C.   MOTION IN LIMINE TO EXCLUDE GOVERNMENT EXHIBIT 109

Lastly, Little moves for an in limine order to exclude Government Exhibit 109, which consists of an email and an attached letter sent on July 1, 2003 by Little to Williams, with a copy to Vann.  The email states that:  "Here is the letter that Keith [Vann] and I created for the Owens.  Please read it and email it to them when you have the time."  The letter, which is on Global Missions letterhead and addressed to "Mr. and Mrs. Allan J. Owens," pertains to additional items needed to "finalize the donation process and allow us to issue your donation letter."  Defendant Little contends that the email and letter must be

1 excluded for lack of proper authentication, and on the ground that the Government cannot
2 show that the letter was actually attached to the email.
3 　　　The authentication of evidence is governed by Rule 901(a), which provides that:
4 "To satisfy the requirement of authenticating or identifying an item of evidence, the
5 proponent must produce evidence sufficient to support a finding that the item is what the
6 proponent claims it is." Fed. R. Evid. 901(a). "The government need only make a prima
7 facie showing of authenticity, as the rule requires only that the court admit evidence if
8 sufficient proof has been introduced so that a reasonable juror could find in favor of
9 authenticity or identification." United States v. Tank, 200 F.3d 627, 630 (9th Cir. 2000)
10 (internal quotations and brackets omitted).
11 　　　Little argues that there is no evidence that he wrote the email or sent it to anyone, or
12 that the letter was attached to the email. The Government, however, has sufficiently
13 countered this argument with the following proffer. First, the email was sent from Little's
14 email address jlittle@stasv.com. According to the records of Network Solutions, a
15 company that registers domain names, that particular email address and the domain
16 www.stasv.com were registered to Strategic Technology Advisors ("STASV"). Gov. Ex. F
17 ¶ 3. Little admitted during his interview with the FBI that he was associated with STASV
18 and had an email address associated with that entity. Id. Ex. B ¶ 12. Little further admitted
19 to case agents that the subject email "is very possibly something from him" and that he
20 "may well have written the letter with VANN." Id. The email address can be tied to
21 Defendant Little through Nicholas Kabbaz, one of two partners at STASV, who set up the
22 email account for Defendant Little and others.
23 　　　Second, the context of the email and the attached letter support the conclusion that
24 both were from Little. A document "may be shown to have emanated from a particular
25 person by virtue of its disclosing knowledge of facts known peculiarly to him." Fed. R.
26 Evid. 901, Advisory Committee Notes Example (4). Here, the email was sent about one
27 month after the Victims donated the property to Williams and Global Missions. The letter
28 to the Victims specifically references the "Alaska property" along with a discussion of

steps to "finalize the donation process." In addition, there is a facial nexus between the email and the letter. The email references a letter to be sent to Owens; the letter is addressed to Owens and bears the same date as the email. While these facts may not conclusively establish that the email and letter were from Little, the Government need only make a prima facie showing of authenticity. Accordingly, the Court **DENIES** Little's motion in limine to exclude Government Exhibit 109.[5]

### D.  DEFENDANT VANN'S CONDUCT

During the pretrial conference held on June 12, 2012, Vann displayed a complete lack of decorum and repeatedly engaged in contemptuous behavior. "[T]here are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant ...:  (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." Illinois v. Allen, 397 U.S. 337, 343-44 (1970). In Allen, the Supreme Court held that it was permissible for the trial court to remove the defendant from the courtroom and continue the trial in his absence in response to his disruptive behavior. Id. at 345-46.

**The Court reiterates to Vann that disruptive and obstreperous conduct such as that displayed by him during the pretrial conference will not be tolerated at trial**. Should Vann disregard the Court's warning and persist in comporting himself in a disruptive manner, the Court will direct the United States Marshals Service to remove him from the courtroom and place him in a holding cell where he may monitor the proceedings until such time as he is willing and able to comport himself appropriately.

### IV.  CONCLUSION

IT IS HEREBY ORDERED THAT:

1.  The Government's Motion in Limine to Exclude Reference to Potential Punishment is GRANTED.

---

[5] The admission of Government Exhibit 109 is, of course, subject to the Government's ability to lay the proper foundation for the admission of the exhibit at trial. As such, the denial of Little's motion in limine is without prejudice to renewal during trial depending on the circumstances presented.

2. The Government's Motion in Limine to Limit Attempt to Impeach Non-Testifying Declarants is GRANTED.

3. The Government's Motion in Limine to Preclude Reference to Facts That Are Not Reasonably Anticipated to be Admitted at Trial is GRANTED.

4. Defendant Little's First in Limine Motion to Exclude Co-Conspirator's Statements and to Request Evidentiary Hearing is DENIED.

5. Defendant Little's Second in Limine Motion to Exclude Mention of Prior Conviction is DENIED.

6. Defendant Little's Third in Limine Motion to Exclude Government Exhibit 109 is DENIED.

IT IS SO ORDERED.

Dated: June 18, 2012

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

UNDER SEAL et al,

        Plaintiff,

  v.

UNDER SEAL et al,

        Defendant.
_____/

Case Number: CR08-00244 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 28, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Keith Aaron Vann
c/o 35 Shadow Mountain Street
Oakland, CA 94605

Dated: June 28, 2012
                                  Richard W. Wieking, Clerk

                                  By: Lisa Clark, Deputy Clerk